**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| CONTIGUITY LLC,<br><br>        Plaintiff,<br><br>v.<br><br>HIKVISION USA, INC.,<br><br>        Defendant. | Case No. 3:23-cv-00160-N |

**<u>DEFENDANT HIKVISION'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)</u>**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | The FAC Should Be Dismissed Because The '084 Claims Are Invalid Under § 101 ................................................................................................................................ | 1 |
| | A. *Alice* Step 1: The '084 Claims Are Directed to an Abstract Idea. ......................... | 1 |
| | B. *Alice* Step 2: The '084 Claims Do Not Recite Any Inventive Concept. ................. | 3 |
| | C. There Are No Claim Construction Issues Precluding Dismissal Under § 101 ................................................................................................................... | 6 |
| II. | The FAC Should Also Be Dismissed For Failing To Plausibly Plead Infringement ......... | 7 |
| III. | The FAC Should Be Dismissed With Prejudice. ............................................................... | 10 |

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Aatrix Software v. Green Shades Software*,
   882 F.3d 1121 (Fed. Cir. 2018) .................................................................................................4

*ALD Soc. LLC v. Google LLC*,
   2023 WL 3184631 (W.D. Tex. Mar. 17, 2023) .......................................................................10

*Am. Axle & Mfg. v. Neapco Holdings*,
   967 F.3d 1285 (Fed. Cir. 2020) ............................................................................................5, 6

*BASCOM Global Internet Servs. v. AT&T Mobility*,
   827 F.3d 1341 (Fed. Cir. 2016) .................................................................................................5

*Berkheimer v. HP, Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) .................................................................................................5

*Bot M8 LLC v. Sony Corp. of Am.*,
   4 F.4th 1342 (Fed. Cir. 2021) .......................................................................................8, 9, 10

*Cisco Sys. v. Uniloc 2017 LLC*,
   813 F. App'x 495 (Fed. Cir. 2020) ............................................................................................5

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) .................................................................................................3

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) .................................................................................................5

*Fitbit Inc. v. AliphCom*,
   2017 WL 819235 (N.D. Cal. Mar. 2, 2017) ..........................................................................2, 3

*Hill-Rom Servs. v. Stryker Corp.*,
   755 F.3d 1367 (Fed. Cir. 2014) .................................................................................................7

*McRO, Inc. v. Bandai Namco Games Am.*,
   837 F.3d 1299 (Fed. Cir. 2016) ............................................................................................6, 7

*NetSoc, LLC v. Match Grp.*,
   2019 WL 3304704 (N.D. Tex. July 22, 2019) ..........................................................................2

# TABLE OF AUTHORITIES
(continued)

Page

*People.ai, Inc. v. Clari Inc.*,
  2023 WL 2820794 (Fed. Cir. Apr. 7, 2023) ...................................................................2, 4, 6

*Repifi Vendor Logistics v. IntelliCentrics*,
  2022 WL 794981 (Fed. Cir. Mar. 15, 2022) ............................................................................2

*Soar Tools v. Mesquite Oil Tools*,
  2021 WL 3030066 (N.D. Tex. July 2, 2021) ..........................................................................8

*Trading Techs. Int'l v. IBG LLC*,
  921 F.3d 1378 (Fed. Cir. 2019) ..............................................................................................4

*Trinity Info Media v. Covalent*,
  72 F.4th 1355 (Fed. Cir. 2023) ......................................................................................1, 5, 6

*Univ. Of Fla. Rsch. Found. v. Gen. Elec. Co.*,
  916 F.3d 1363 (Fed. Cir. 2019) ..............................................................................................6

I.     **The FAC Should Be Dismissed Because The '084 Claims Are Invalid Under § 101.**

   A.     *Alice* **Step 1: The '084 Claims Are Directed to an Abstract Idea.**

Contiguity accuses Hikvision of committing the "cardinal sin" of "oversimplifying the claims" at *Alice* step one and "fail[ing] to account for the specific requirements of Claim 1."[1] Dkt. 31 at 8. But in its Opening Brief, Hikvision reproduced in full the language of the asserted claims to faithfully demonstrate that nothing was being oversimplified and to assure the Court that all the claim requirements were fully addressed. *See* Dkt. 20 at 7 & Ex. C (APP_030).

On their face, as Judge Rodriguez correctly found,[2] the '084 claims are directed to the abstract idea of collecting, analyzing, and displaying or transmitting vehicle-related data. *See* Dkt. 21, WD Tex. § 101 Order at 5-8 (Ex. B (APP_023-26) ('084 claims "are directed to the abstract idea of collecting, analyzing, and displaying data"). The claims recite a series of steps for manipulating data and nothing more: collecting vehicle data ("acquiring imagery"); analyzing the data ("identifying a vehicle", "determining a speed," "generating a citation signal"); and displaying or transmitting the results of the data collection and analysis ("attempting to transmit the citation signal," "imagery is communicated"). The Federal Circuit has consistently and repeatedly held that patent claims like these "focused on collecting information, analyzing it, and displaying certain results [are] in the familiar class of claims directed to a patent-ineligible concept." *Trinity Info Media v. Covalent*, 72 F.4th 1355, 1362 (Fed. Cir. 2023); Dkt. 20 at 6-10 (collecting cases). This Court has likewise recognized that "presenting results of data collection and analysis," as recited in the '084 claims, is "something that the Federal Circuit has explicitly said resides squarely

---

[1] Contiguity does not dispute that claim 1 is representative of all the '084 patent claims for § 101 purposes, as Hikvision explained in its Opening Brief. Dkt. 20 at 14-15.

[2] *See* Dkt. 20 at 3-4 & Ex. B (APP_019-028). Conduent's renewed motion to dismiss on § 101 grounds remains pending, as of the filing of this Reply Brief.

in the realm of abstract ideas" *NetSoc, LLC v. Match Grp.*, 2019 WL 3304704, at *2 (N.D. Tex. July 22, 2019)).

Contiguity cites *People.ai* (where all patent claims were found invalid under § 101) in arguing that the '084 patent claims recite a patent-eligible "automated" process. Dkt. 31 at 1-2, 8-10 (*People.ai, Inc. v. Clari Inc.*, 2023 WL 2820794 (Fed. Cir. Apr. 7, 2023)). But as the Federal Circuit explained in *People.ai*, "automation of a longstanding manual process is not patent eligible at *Alice/Mayo* step one." 2023 WL 2820794, at *11. The '084 claims here merely purport to automate the longstanding process of police issuing speeding tickets by observing vehicles. Contiguity claims to have automated a "method of infraction detection" that differs only in that it uses image data acquisition, analysis and manipulation steps that are performed with generic cameras and computer equipment. *See Repifi Vendor Logistics v. IntelliCentrics*, 2022 WL 794981, at *2 (Fed. Cir. Mar. 15, 2022) ("automation of [a] conventional human process [using existing technology] to make it more efficient is itself an abstract idea"). The '084 patent claims purport to replace an already existing manual process (police observing and issuing speeding tickets) with an automated method that utilizes off-the-shelf cameras and computers. *See People.ai*, 2023 WL 2820794, at *7 ("the claimed invention is directed to replacement of an already existing manual process of updating systems of record with an automated process, and the benefits of its claims are improvements to accuracy, speed, and efficiency—benefits inherent in automation"). This method is an unpatentable abstract idea.

Contiguity's reliance on *Fitbit* is also misplaced. *See* Dkt. 31 at 11 (*Fitbit Inc. v. AliphCom*, 2017 WL 819235 (N.D. Cal. Mar. 2, 2017)). Contiguity argues the '084 claim limitation "generating a citation signal when the speed of the first vehicle exceeds a predetermined speed" is analogous to the *Fitbit* claim limitation "stop collecting heart rate data

when a heart rate reading of a predetermined level of heart rate data quality is obtained." But Contiguity focuses solely on the data collection part of the claim limitation, and as the court in was **not** the selective data collection tied to a "predetermined" value that made the claim non-abstract: "the fact that the heart rate data collection here is selective and not continuous does not make the focus of the claims less abstract." 2017 WL 819235, at *20.  Rather, the claims in *Fitbit* combined a physical "single-gesture trigger" with particular logic to "improve a specific technological tool (a heart rate monitor)." *Id*. There is no similar improvement to any technological tool disclosed or claimed in the '084 patent.

        **B.**    *Alice* **Step 2: The '084 Claims Do Not Recite Any Inventive Concept.**

Regarding *Alice* step two, Contiguity first cites *Elec. Power* (where all patent claims were found invalid under § 101) and broadly urges that "methods that 'generate new data' are inventive and therefore patent-eligible under Section 101." Dkt. 31 at 2, 12 (*Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016)).  But Contiguity takes the "generate new data" language from *Elec. Power* out of context.  The Federal Circuit found no inventive concept in *Elec Power* because the claims did "not require an arguably inventive set of components or methods, such as measurement devices or techniques, that would generate new data." 830 F.3d at 1355. There was no "generation of new data" in *Elec. Power* because the claims there merely specified "what information … it is desirable to gather, analyze, and display, including in 'real time'; but they do not include any requirement for performing the claimed functions of gathering, analyzing, and displaying in real time by use of anything but entirely conventional, generic technology. The claims therefore do not state an arguably inventive concept in the realm of application of the information-based abstract ideas." *Id*. at 1356. The same is true of the '084 patent claims, which merely recite information-processing steps ("acquiring imagery"; "identifying a vehicle"; "determining a speed"; "generating a citation signal"; and "attempting to

3

transmit") that can be performed with off-the-shelf camera, computer, and network technologies. In this regard, Contiguity's Opposition does not contend that the '084 patent claims recite—or that the '084 patent even discloses—any purportedly new camera or computer technologies, and the '084 specification confirms that the claimed invention merely uses off-the-shelf generic equipment. *See* Dkt. 21, Ex. A at 7:21-62 (APP_016).

Contiguity also argues that a § 101 ruling is precluded because there are purportedly fact disputes about whether the steps of "generating a citation signal" and "attempting to transmit" were "well-understood, routine, or conventional at the time of the invention" Dkt. 31 at 2-3, 12-13. The "generating" and "attempting to transmit" steps, however, are "necessary parts of the abstract idea" itself (collecting, analyzing, and displaying/transmitting vehicle-related data), and those steps "cannot supply the inventive concept." *People.ai*, 2023 WL 2820794, at *12; *see also Trading Techs. Int'l v. IBG LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019). As the Federal Circuit did in *People.ai*, this Court should reject Contiguity's assertion that Hikvision must "produce evidence that the claimed system was in routine or conventional use." 2023 WL 2820794, at *12. The Federal Circuit agreed that this "evidentiary argument is a red herring because the claimed steps merely spell out the abstract idea"—like they do here—"and the abstract idea cannot provide the inventive concept." *Id*. at *14.

Further, Contiguity relies on *Aatrix* for its assertion that allegations in the FAC relating to the "generating" and "attempting to transmit" claim limitations raise factual disputes under *Alice* step two. Dkt. 31 at 12 (*Aatrix Software v. Green Shades Software*, 882 F.3d 1121 (Fed. Cir. 2018)). The factual allegations in *Aatrix*, however, "suggest[ed] that the claimed invention [was] directed to an improvement in the computer technology itself and not directed to generic components performing conventional activities." 882 F.3d at 1127. Here, Contiguity has never

4

contended—in the FAC or otherwise—that the '084 patent claims are directed to any sort of improvement in computer technology. Rather, the "generating a citation signal" and "attempting to transmit" steps of the '084 patent are performed with off-the-shelf equipment. These steps are not directed to any improvement in computer technology and they do not raise fact questions under § 101. *See Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1369-70 (Fed. Cir. 2018).

Contiguity also accuses Hikvision of seeking "a *per se* finding of ineligibility under Section 101" because "the claimed method runs on 'off-the-shelf generic equipment.'" Dkt. 31 at 13 (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016); *BASCOM Global Internet Servs. v. AT&T Mobility*, 827 F.3d 1341 (Fed. Cir. 2016)). Not so. Hikvision maintains it is the claimed subject matter that matters under § 101. In *Enfish*, for example, because the claims were "directed to an improvement in the functioning of a computer," the use of a general-purpose computer to practice the invention did not dictate the outcome under § 101. 822 F.3d at 1338. Likewise, in *BASCOM*, "the claimed invention represent[ed] a 'software-based invention[] that improve[s] the performance of the computer system itself.'" 827 F.3d at 1351. The '084 patent, by contrast, does not claim any improvement to computer functionality.

Finally, Contiguity devotes nearly three pages of its Opposition to reproducing verbatim passages from the FAC describing purported differences between the alleged invention and "conventional methods of traffic speed detection." Dkt. 31 at 5-7. These "conclusory allegations that the prior art lacked elements of the asserted claims are insufficient to demonstrate an inventive concept." *Trinity*, 72 F.4th at 1366; *see also Cisco Sys. v. Uniloc 2017 LLC*, 813 F. App'x 495, 498-99 (Fed. Cir. 2020). Many of the purported features of the alleged invention are not actually tethered to asserted claims 1-3 of the '084 patent, such as, for example, "databasing vehicles" and "capturing images of the driver." *See Am. Axle & Mfg. v. Neapco Holdings*, 967

5

F.3d 1285, 1293 (Fed. Cir. 2020) ("[W]e have repeatedly held that features that are not claimed are irrelevant as to step 1 or step 2 of the *Mayo/Alice* analysis."). And the abstract idea recited in the '084 patent claims is not patent-eligible despite the FAC's self-serving characterizations of the alleged invention as "more efficient," "more accurate," "more precise," or "less error prone." *See People.ai*, 2023 WL 2820794, at *12 ("Claims directed to performance of a longstanding manual process on a generic computer may lead to laudable increases in efficiency or accuracy (the exact kinds of improvements computerization is expected to yield in all cases), but lack an inventive concept which might render them patent eligible at *Alice/Mayo* step two."). Nor do allegations about "driver safety" or "reduced danger to police officers and motorists" make the claims patent-eligible. *See Univ. Of Fla. Rsch. Found. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) ("that the automation can 'result in life altering consequences' is laudable, but it does not render it any less abstract").

### C. There Are No Claim Construction Issues Precluding Dismissal Under § 101.

Contiguity vaguely argues that "claim construction issues" preclude resolution of the § 101 eligibility issue at this stage. Dkt. 31 at 14-16. But as the Federal Circuit recently reconfirmed, "[a] patentee must do more than invoke a generic need for claim construction or discovery to avoid grant of a motion to dismiss under § 101. Instead, the patentee must propose a specific claim construction or identify specific facts that need development and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes." *Trinity,* 72 F.4th at 1360-61. Contiguity has not done so here.

Rather, Contiguity has manufactured a phantom claim construction issue so it can attempt to analogize this case to *McRO, Inc. v. Bandai Namco Games Am.*, 837 F.3d 1299 (Fed. Cir. 2016). Although there is no particular mathematical equation, formula, or rule literally recited in claim 1 for "determining a speed of the first vehicle," Contiguity urges the Court to construe this

6

limitation to improperly import from the specification "a computation based on the times of the first and second image captures and the distance between them." Dkt. 31 at 14-15. That construction reads into the claim what the specification explicitly describes as just "[o]ne embodiment" (APP_015 at 5:30-48) from among "exemplary embodiments" (APP_014 at 3:30-34). *See Hill-Rom Servs. v. Stryker Corp.,* 755 F.3d 1367, 1371 (Fed. Cir. 2014) ("we do not read limitations from the embodiments in the specification into the claims").

Even if Contiguity's construction is applied, however, this case is nothing like *McRO*, which involved complex 3–D animation methods that utilized "unconventional rules that relate sub-sequences of phonemes, timings, and morph weight sets." 837 F.3d at 1302-03.  In *McRO*, the "claims themselves set out meaningful requirements for the first set of rules: they 'define[ ] a morph weight set stream as a function of phoneme sequence and times associated with said phoneme sequence'" and "further require[d] 'applying said first set of rules to each sub-sequence ... of timed phonemes.'" *Id*. at 1313. It was, according to the Federal Circuit, "[t]he specific, claimed features of these [unconventional] rules [that] allow[ed] for the improvement realized by the invention." *Id*. Here, even if "determining a speed of the first vehicle" were construed as Contiguity proposes, there are no "unconventional rules" as claimed in *McRO* that would make '084 claim 1 eligible under § 101. Instead, as Judge Rodriguez previously held, the method of claim 1 "determine[s] the vehicle's speed using basic arithmetic" and just "effectively digitize[s] a mathematical equation (speed = distance ÷ time)." Dkt. 21, W.D. Tex. § 101 Order at 9 (EX. B (APP_027). And issuing a speeding ticket (generating a citation signal) when a vehicle "exceeds a predetermined speed" is undoubtedly a conventional rule—not any ***un***conventional rule.

## II. The FAC Should Also Be Dismissed For Failing To Plausibly Plead Infringement.

Contiguity's Opposition (Dkt. 31 at 16-17) does not dispute that: (i) the claim limitation "attempting to transmit" the citation signal "***to a device of a person associated with the vehicle***"

7

is highly material; and (ii) this limitation was added to all the patent claims to distinguish the conventional prior art approach of police sending a speeding ticket. *See* Dkt. 20 at 15-21. Indeed, the Opposition characterizes this claim limitation as "critical." Dkt. 31 at 1. Under *Bot M8*, therefore, given the undisputed "materiality" of this critical limitation, Contiguity is required to plead specific facts demonstrating how the limitation is allegedly present in the accused Hikvision product. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).

Nowhere in the FAC or the attached claim chart, however, does Contiguity identify any factual allegations demonstrating how the accused Hikvision product makes any attempt to transmit a citation signal "***to a device of a person associated with the vehicle***." Contiguity merely parrots the claim language and alleges no facts explaining how or why the accused product or the cited screenshots meet this element. This is insufficient, because "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8*, 4 F.4th at 1353; *see also Soar Tools v. Mesquite Oil Tools*, 2021 WL 3030066, at *4 (N.D. Tex. July 2, 2021) ("[A] court should dismiss a patent-infringement claim where the plaintiff merely recites that the defendant infringes a claim limitation but fails to identify the parts of the allegedly infringing instrumentality that perform the limitation or allege how the identified parts meet the text of the limitation.").

Contiguity contends that "nothing in Contiguity's FAC or claim chart somehow establishes that the citation signal is *not* transmitted to a 'person associated with the vehicle,' or that such transmission is not attempted." Dkt. 31 at 3, 16 (emphasis in original). But this negative argument fundamentally undermines and contradicts the affirmative pleading requirements of *Bot M8* and *Twombly/Iqbal*. It is not enough for Contiguity to point to the absence of factual

allegations that would rule out or exclude infringement. Instead, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim" [and] "[u]nder *Iqbal/Twombly*, allegations that are 'merely consistent with' infringement are insufficient." *Bot M8*, 4 F.4th at 1353-54. Contiguity has identified no factual allegations making it plausible that the accused Hikvision product attempts to transmit a citation signal "***to a device of a person associated with the vehicle.***"

Moreover, the minimal facts that Contiguity does affirmatively plead are inconsistent with and contradict its claim of infringement. The claim chart consistently and exclusively alleges that the Hikvision product transmits a citation signal "to police" only—and ***not*** "to a device of a person associated with the vehicle"—with the "police issu[ing] traffic tickets to the drivers of the vehicles" in the conventional way. Dkt. 18-2 at 10, 12-13. Contiguity argues that the FAC's claim chart does mention that "speed violation data is firstly sent to police (law enforcement agency) for review'—suggesting that, thereafter, the speed violation data is sent elsewhere (e.g., to the mobile device of a person associated with the vehicle)." Dkt. 31 at 16. Yet this speculative assertion—which is not actually pleaded in the FAC or the claim chart—is expressly contradicted by multiple other excerpts that do appear in the claim chart. What Contiguity has actually pleaded is that a "traffic violation event" (*e.g.,* a speeding violation) is ***sent to police***, and thereafter ***the police issue traffic tickets in the conventional way***.

> When the vehicle exceeds the predetermined car limit, a citation (or traffic violation event) is generated. The traffic violation event (here, over-speeding alert) is send to police and then police issues traffic tickets to drivers of the vehicles.
>
> **TRAFFIC TICKET MANAGEMENT**
>
> Verifying Violations with Recorded Evidence
>
> Traffic cameras automatically identify and report traffic violation events such as running red lights, speeding, improper lane usage, illegal parking, using a phone while driving, and failure to use a seat belt. Traffic officers can then search for and verify reported events manually. And when violations are confirmed, traffic officers can issue traffic tickets using the captured video as evidence.

9

Dkt. 18-2 at 10, 12 (emphasis added). These allegations contradict both the literal claim language and the representations made to the USPTO that the '084 patent claims are limited to transmitting a citation signal "to a device of a person associated with the vehicle," and do ***not*** cover the police issuing a speeding ticket as was conventionally done in the prior art. *See* Dkt. 20 at 15-21. Contiguity's FAC and claim chart plead facts that are inconsistent with, and contradict, its direct infringement claim, and Contiguity has "pleaded itself out of court." *Bot M8*, 4 F.4th at 1354.

### III. The FAC Should Be Dismissed With Prejudice.

Contiguity's Opposition concludes with a perfunctory request that "if the Court is inclined to grant Hikvision's Motion in any respect, Contiguity would ask that any such dismissal be *without* prejudice and with leave to amend." Dkt. 31 at 17. But the Fifth Circuit has rejected such a bare request "tacked" to the end of an opposition as a proper request for leave to amend, and Contiguity also failed to provide the Court with a proposed amended complaint or explain how any potential amendment would cure the defects identified in Hikvision's Motion. *See ALD Soc. LLC v. Google LLC*, 2023 WL 3184631, at *5-6 (W.D. Tex. Mar. 17, 2023) (collecting cases). Nor did Contiguity make any attempt to address Hikvision's futility argument. Dkt. 20 at 22. Contiguity has twice tried, and failed, to plead a plausible claim for infringement against Hikvision, and the Court should decline Contiguity's request for a third bite at the apple.

Dated: September 19, 2023                Respectfully submitted,

*/s/ Keith B. Davis*
Keith B. Davis
Texas State Bar No. 24037895
JONES DAY
2727 North Harwood Street
Dallas, TX 75201.1515
Telephone: +1.214.220.3939
Facsimile: +1.214.969.5100
*ATTORNEY FOR DEFENDANT, HIKVISION USA*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 19, 2023, the foregoing document was served via electronic means upon the following counsel of record for Plaintiff who have appeared in this case:

>William P. Ramey, III
>wramey@rameyfirm.com
>Jeffrey E. Kubiak
>jkubiak@rameyfirm.com
>Ramey LLP
>5020 Montrose Blvd.
>Suite 800
>Houston, Texas 77006

<em><u>/s/ Keith B. Davis</u></em>

11