IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CONTIGUITY LLC, <br><br> Plaintiff, <br><br> v. <br><br> HIKVISION USA, INC., <br><br> Defendant. | Case No. 3:23-cv-00160-N |

**APPENDIX IN SUPPORT OF DEFENDANT HIKVISION'S OPPOSITION TO PLAINTIFF'S MOTION TO VACATE THE FINAL JUDGMENT**

| Exhibit | Document | Page No. |
|---|---|---|
| Exhibit A | Letter from John A. Marlott to William P. Ramey, III and Jeffrey E. Kubiak regarding dismissal of Complaint, dated March 7, 2023 (Redacted) | APPENDIX_003 |
| Exhibit B | Order Granting Defendant's Motion to Dismiss for Failure to State a Claim, *ALD Soc. LLC v. Google LLC*, No. 22-cv-972, 2023 WL 3184631 (W.D. Tex. Mar. 17, 2023) | APPENDIX_006 |

Dated: February 6, 2024

Respectfully submitted,

*/s/ Keith B. Davis*
Keith B. Davis
Texas State Bar No. 24037895
JONES DAY
2727 North Harwood Street
Dallas, TX 75201.1515
Telephone: +1.214.220.3939
Facsimile: +1.214.969.5100
*ATTORNEY FOR DEFENDANT, HIKVISION USA*

2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 6, 2024, the foregoing document was served via electronic means upon the following counsel of record for Plaintiff who have appeared in this case:

>William P. Ramey, III
>wramey@rameyfirm.com
>Jeffrey E. Kubiak
>jkubiak@rameyfirm.com
>Ramey LLP
>5020 Montrose Blvd.
>Suite 800
>Houston, Texas 77006

                                        */s/ Keith B. Davis*

NAI-1539245251v1

# JONES DAY

110 NORTH WACKER DRIVE • SUITE 4800 • CHICAGO, ILLINOIS 60606
TELEPHONE: +1.312.782.3939 • JONESDAY.COM

Direct Number: 3122694236
JAMARLOTT@JONESDAY.COM

March 7, 2023

**CONFIDENTIAL - RULE 408**

**VIA E-MAIL &
CONFIRMATION VIA U.S MAIL**

William P. Ramey, III
Jeffrey E. Kubiak
Ramey LLP
5020 Montrose Blvd., Ste 800
Houston, TX 77006

Re:   *Contiguity LLC v. Hikvision USA, Inc.* (N.D. Tex. No. 23-cv-00160)

Dear Counsel:

As Jeff and I discussed by phone today, Contiguity should promptly dismiss its complaint in this case alleging that Hikvision USA, Inc. infringes U.S. Patent No. 8,031,084 (the '084 patent).

There are multiple reasons why Contiguity should promptly dismiss the complaint against Hikvision, including the following:



AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO • SAN FRANCISCO
SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

APPENDIX_003

JONES DAY

Jeffrey E. Kubiak
March 7, 2023
Page 2

(2) .

(3) **Even if the accused Hikvision "Speed Measurement Solution" product was ever made, used, sold, offered for sale, or imported into the United States (whether in the past or at some point in the future), Contiguity's claim charts attached to the complaint demonstrate that there is no plausible claim for infringement of the '084 patent by that product.** All of the claims of the '084 patent necessarily require "attempting to transmit/communicate the citation signal to a device of a person associated with the vehicle":

| Independent Claim 1 | Independent Claim 8 | Independent Claim 15 |
|---|---|---|
| attempting to transmit the citation signal to a device of a person associated with the vehicle. | attempting to communicate the citation signal to a device of a person associated with the vehicle. | attempting to transmit the citation signal to a device of a person associated with the vehicle. |

Indeed, during prosecution of the application for the '084 patent, and in order to secure allowance of the claims, the patent applicant amended each of the independent claims to expressly require this limitation. In the accompanying Remarks, the patent applicant distinguished the prior art Trajkovic reference (U.S. Pat. No. 6,442,474) as disclosing a "traffic monitoring system [that] employs a traffic violation detection system that issues a ticket when a vehicle exceeds a speed limit." The applicant argued that law enforcement "merely issuing a ticket" as in the prior art "is not the same as transmitting a signal that indicates a violation," and further that "sending data to a mobile user simply does not equate to generating and transmitting a *citation signal*" to a wireless device (*e.g.*, mobile phone or onboard navigation system) of a person associated with the vehicle, as claimed.

Contiguity's claim charts attached to the complaint do not identify any functionality in the accused Hikvision "Speed Measurement Solution" product for transmitting or communicating a "citation signal to a device of a person associated with the vehicle." Instead, Contiguity's claim charts explicitly and exclusively refer solely to traffic violations being sent to the police or law enforcement—with the police then issuing a ticket/citation to a speeding driver in a conventional manner (*e.g.*, complaint Exh. B at p. 10 of 14):

> When the vehicle exceeds the predetermined car limit, a citation (or traffic violation event) is generated. The traffic violation event (here, over-speeding alert) is send to police and then police issues traffic tickets to drivers of the vehicles.

Jeffrey E. Kubiak
March 7, 2023
Page 3

Even according to Contiguity's infringement claim charts, the accused Hikvision product cannot infringe any of the claims of the '084 patent because there is no attempt to transmit/communicate a citation signal to a wireless device of a person associated with a vehicle. *See, e.g., Southwall Techs, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers.").

\* \* \*

Given these facts, Contiguity should promptly dismiss the complaint against Hikvision USA so the Court and the parties can be spared further time and litigation expense.

With Hikvision's response to the complaint currently due on March 20, we look forward to hearing back from you as soon as possible, preferably by no later than March 13.

Sincerely,

*/s/ John A. Marlott*

John A. Marlott

Attachment

cc:     John H. Wright

2023 WL 3184631
Only the Westlaw citation is currently available.
United States District Court, W.D. Texas, Waco Division.

ALD SOCIAL LLC, Plaintiff,
v.
GOOGLE LLC, Defendant.

CIVIL ACTION NO. WA-22-CV-972-FB
|
Signed March 17, 2023

**Attorneys and Law Firms**

William P. Ramey, III, Ramey LLP, Houston, TX, for Plaintiff.

Erica Benites Giese, Amanda N. Crouch, Jackson Walker, L.L.P., San Antonio, TX, Catherine R. Lacey, Pro Hac Vice, Jordan R. Jaffe, Wilson Sonsini Goodrich & Rosati, San Francisco, CA, Nathaniel St. Clair, II, William Thomas Nilsson, Jackson Walker LLP, Dallas, TX, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

FRED BIERY, UNITED STATES DISTRICT JUDGE

 *1  Before the Court Defendant Google LLC's Motion to Dismiss Plaintiff ALD Social, LLC's Complaint (docket no. 12), along with Plaintiff's response (docket no. 15) in opposition thereto, Defendant's reply (docket no. 17) to Plaintiff's response, and Defendant's notice of supplemental authority (docket no. 19). After careful consideration, the Court is of the opinion that the motion should be granted.

### Background

Plaintiff ALD Social LLC ("Plaintiff" or "ALD Social") brings suit against Defendant Google, LLC ("Defendant" or "Google"). This is one of six lawsuits ALD Social filed in the Western District of Texas alleging infringement of two patents ("Asserted Patents"): U.S. Patent Nos. 9,198,054 (the '054 patent) and 9,402,158 (the '158 patent). The Asserted Patents describe a system which detects crowd safety risks, such as mobs and riots, and alerts emergency personnel of that risk. (Comp. [docket no. 1-1] at Ex. A&B).

Plaintiff alleges Google's "emergency alert platform Crisis Response" and "Public Alerts platform" ("Accused Products") infringe on the Asserted Patents. The claim charts attached to Plaintiff's complaint describe a system which monitors for natural disasters, such as floods and hurricanes, and alerts those who may be in peril of that risk. (*Id.* at Exhibit C); *see also* (Opp. [docket no. 15] at 6) (explaining that Google's Accused Products "monitor for emergencies and natural disasters, and alert those specifically impacted or potentially in peril").

Google moves to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, Google argues Plaintiff fails to plausibly state a claim for patent infringement because the Asserted Patents concern risks from crowds, not risks to crowds, and the Accused Products do not determine anything related to a crowd. Google also contends that an amendment would be futile and thus any request by Plaintiff for leave to file an amended complaint should be denied.

Plaintiff responds that the Accused Products may affect a large group or crowd and therefore it has stated a claim for patent infringement upon which relief can be granted. Plaintiff also states that, in the event the Court is inclined to grant Google's motion to dismiss, it requests leave to file an amended complaint.

The Asserted Patents

The application process for the Asserted Patents began on September 2, 2011 when the applicants filed Provisional Application No. 61/573,112 (" '112 provisional"). (Motion [docket no. 12-1] at Exhibit A). The '112 provisional states that the purported invention is in "a new technical field" that the applicant terms "Aggregate Location Dynamics." (*Id.* at 1).

The '112 provisional defines Aggregate Location Dynamics as "a predictor for mobs, riots, or other public safety risks posed by large crowds of human beings." (*Id.* at 2). The applicant explains: "People can't predict mobs and that is the problem. Nothing out there has achieved this yet. This invention seeks to remedy that." (*Id.* at 1:24-25).

**\*2** To this end, Plaintiff's invention "gives the right people a bird's eye view of [an] army's formation, as if they were generals up 1000 feet in the sky, looking straight down, and could see a dot for every head, or a dot for every group of heads" and allowing those "right people" to "make sense, that is know what is happening or what is about to happen, by looking at a bunch of location dots, each dot representing an individual device location or a cell tower location in a given geographic boundary." (*Id.* at 2). Stated another way, the Asserted Patents "analyze the aggregate locations of persons in the network and calculate[s] the risk." (*Id.*) Importantly, Plaintiff's invention is suitable for any group "wanting as much warning as possible about riots and other crowd related risks." (*Id.* at 8.)

Consistent with the '112 provisional, the invention claims an "Aggregate Location Dynometer (ALD)" which issues alerts where there is "problematic crowd risk." (Comp. [docket no. 1-1] at Exhibit A ('054 patent at Abstract) & Exhibit B ('158 patent at Abstract)). The Asserted Patents' shared description states: "The present invention introduces an Aggregate Location Dynometer (ALD), an analytical server utilizing location based services (LBS) on a network to predict public safety risks, *e.g.*, the unexpected impending formation of a flash mob, or a riot, etc." (*Id.* at Exhibit A at '054 patent at 2:57-60; Exhibit B at '158 patent at 2:53-56). As indicated above, the Aggregate Location Dynometer predicts public safety risks posed by large crowds of human beings by analyzing "a bird's-eye view of people formation." (*Id.* at Exhibit A at '054 patent at 2:57-63; Exhibit B at '158 patent at 2:53-59).

To determine whether the formation of people poses a "crowd risk," the Aggregate Location Dynometer uses a "Crowd Risk Determinant." (*Id.* at '054 patent at Abstract; '158 patent at Abstract). "The Crowd Risk Determinant requests location information associated with a plurality of wireless devices in a given area regarding a respective viral event. (*Id.*) "The Crowd Risk Determinant then determines if the viral event indicates a crowd safety risk, based on the shape and movement of observed wireless devices." (*Id.*).

The Asserted Patents include figures to illustrate this concept, where dots represent the locations of people. (Comp. [docket no. 1-1] at Exhibits A & B at Fig. 7); *see also* (Motion [docket no. 12] at Exhibit A at '112 prov. at 5). For example, the Asserted Patents explain that one such figure shows a "crescent shape 103 in the geographical area 200" which "is recognized as a pattern to be wary of. This crescent shape may represent a variety of different occurrences (*e.g.*, a protest in front of a given location such as a courthouse, a famous author at a bookstore, *etc.*)." (Comp. [docket no. 1-1] at Exhibit A at '054 patent at 7:65-8:2). Plaintiff thus alleges–consistent with the specifications–that both claims of the Asserted Patents require "a crowd risk determinant" or "determining a crowd risk" based on the location of wireless devices. *See* (Comp. [docket no. 1] & Attachments [docket no. 1-1] at Exhibits A & B) (explaining that Asserted Patents claim system to "determine crowd risk based on an aggregation of said location of each of said plurality of wireless devices associated with said virtual event" and "assess said aggregation of

said current locations of said plurality of physical wireless devices pertaining to said potential viral event.") (quoting Claim 1 of '054 patent & Claim 1 of '158 patent).

### The Accused Products

Google's products are "Google's emergency alert platform Crisis Response" (hereinafter, "Google Crisis Response") and "Google's Public Alerts platform." (Comp. [docket no. 1-1] at Claim Charts.) The systems provide information about emergencies including "floods, wildfires, earthquakes, and hurricanes" to someone using Google's applications or services on a mobile phone. (*Id.*). For example, a person who is using Google Maps to navigate may see a warning that a hurricane could affect their planned route. As another example, a person looking for information using Google Search may see information about a wildfire. (*Id.*) Moreover, even when not actively using a Google application, a mobile phone may receive a notification about an emergency, such as a wildfire, floor or earthquake. (*Id.*)

 **\*3**  The infringement allegations for Google Public Alerts are similar to those for Google Crisis Response. (Comp. [docket no. 1-1] at Claim Charts.) A user may be notified of certain emergencies via Google applications on their phone. Specific emergencies identified in the charts attached to Plaintiff's complaint are "active wildfires, tropical storms, floods, and earthquakes." (*Id.*) The primary difference in Plaintiff's allegations between Google Crisis Response and Google Public Alerts is that Public Alerts focuses on the alerts being published through Google by partners such as public safety agencies whereas the Crisis Response allegations include Google features involved in detecting or forecasting natural disasters. (*Id.*) For both Accused Products, Plaintiff's allegations relate only to alerts sent to warn users about natural disasters. (*Id.*)

### Dismissal for Failure to State a Claim for Relief Pursuant to Rule 12(b)(6)

In patent cases, issues that are unique to patent law are governed by Federal Circuit law. *See Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1279 (Fed. Cir. 2012). However, because motions to dismiss under Rule 12(b)(6) raise purely procedural issues, in patent cases, courts apply the law of the regional federal circuit—in this case, the Fifth Circuit Court of Appeals—when deciding whether such a motion should be granted. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012).

Rule 12(b)(6) requires that a complaint contain sufficient factual matter, if accepted as true, to " 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this factual plausibility standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," based on "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported mere conclusory statements, do not suffice." *Id.* In resolving a motion to dismiss for failure to state a claim, the question is "not whether [the plaintiff] will ultimately prevail, ... but whether [the] complaint was sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678). "The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Kaiser Aluminum & Cham. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).

An "element-by-element pleading standard for patent infringement ... is unsupported and goes beyond the standard the Supreme Court articulated in *Iqbal* and *Twombly*." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). Rather, "[t]he adequacy of the facts pleaded depends on the breadth and complexity of both the asserted patent and the accused product or system and the nature of the defendant's business activities." *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013).

A plaintiff may plausibly plead by providing the asserted patents, identifying the accused products "by name and by attaching photos of the product packaging," and alleging that the accused products meet "each and every element of at least one claim." *Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). But, a plaintiff may still fail to plausibly state a claim where (1) the infringement allegation rests on an implausible claim construction, *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141-42 (Fed. Cir. 2018), or (2) the factual allegations are actually inconsistent with and contradict infringement. *Bot M8 LLC*, 4 F.4th at 1354. In sum, "[t]he court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P.*, 594 F.3d at 387.

Discussion

**\*4**  As an initial matter, neither the provisional nor specifications of the Asserted Patents mention any risk other than those posed by large crowds of people. Indeed, the Asserted Patents are about detecting risks posed by crowds, not risks posed to crowds. As the provisional patent application for both asserted patents explains: "People can't predict mobs and that is the problem. Nothing out there has achieved this yet. This invention seeks to remedy that." (Motion [docket no. 12] Exhibit A at Provisional Application No. 61/573,112 at 1:24-25). As Plaintiff points out, the Asserted Patents are directed at a system which analyzes the location of wireless devices to "predict public safety risks, *e.g.*, the unexpected impending formation of a flash mob, or a riot, etc." (Comp. [docket no. 1-1] Exhibit B at '054 patent at 2:59-60). Yet, Plaintiff does not allege the Accused Products predict risks from crowds, let alone predict mobs or riots.

Moreover, Plaintiff alleges infringement against a system which relays messages about natural disasters, such as floods, hurricanes, and wildfires. (*Id.* at Exhibit C at Claim Charts). Yet, Plaintiff directs the Court's attention to nothing in the Accused Products suggesting they include a "crowd risk determinant" or "determin[e] a crowd risk," limitations required by each patent claim. Accordingly, Plaintiff's complaint fails to state a claim upon which relief can be granted under the *Twombly/Iqbal* standard.

In response to Google's motion, Plaintiff argues it has plausibly alleged facts to support infringement because natural disasters "includ[e] instances where a large group or crowd may be affected." (Opp. [docket no. 15] at 5-6.) As Google points out, "that is not what the claims require." (Reply [docket no. 17] at 4.) As discussed above, each asserted claim requires determining a "crowd risk" as that term is used by the Asserted Patents, *i.e.*, a risk from a crowd. Plaintiff does not address this requirement either in its complaint or opposition. Nor does Plaintiff rebut the cited passages from the Asserted Patents confirming that this is a commonsense reading of "crowd risk" or point to any evidence supporting its reading of the claims.

Even presuming a "crowd risk" could plausibly be read more broadly to mean a risk where there is any involvement of a crowd, the claims require "determining a crowd risk" or a "crowd risk determinant." Plaintiff does not allege in its complaint or opposition that the Accused Products make any determination about whether a crowd "may be affected." Indeed, neither the complaint nor the opposition suggest that the Accused Products make any determination about the presence or absence of a crowd at all. Instead, Plaintiff's only argument is that the Accused Products "monitor for emergencies and natural disasters, and alert those specifically impacted or potentially imperiled"–not that the Accused Products make an actual determination regarding whether a crowd is at risk. *See* (Opp. [docket no. 15] at 6.) As such, Plaintiff cannot plausibly allege Google's Accused Products "determin[e] a crowd risk" or include a "crowd risk determinant," and dismissal is therefore appropriate. *See Ottah*, 884 F.3d at 1141-42 (affirming dismissal at pleading stage because "in view of the specification and prosecution history" claim limitation "could not plausibly be construed to include or be the equivalent of" what patentee contended met limitation); *see also Bot M8*, 4 F.4th at 1353 ("The plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has met those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that accused product infringes the patent claim.").

In another case brought by Plaintiff asserting the same patents, the Defendant Verkada, Inc. ("Verkada") also moved to dismiss on grounds that Plaintiff failed to plead a plausible claim for patent infringement. Although the specific claim terms addressed in Verkada's motion were different and Google and Verkada have different accused products, the order granting Verkada's motion to dismiss is instructive. *See ALD Social, LLC v. Verkada, Inc.*, Case No. 23-cv-0049-JSC, 2023 WL 1802418 (N.D. Cal. Feb. 7, 2023). [1]

**\*5**  The Court noted Plaintiff's "invention is a system to track the geographic location of wireless devices and determine whether a particular geographic location represents a 'crowd related public safety risk.' " *Id.* at 2. "One such risk," the Court explained, "is a potential viral outbreak when the system detects, *e.g.*, too many wireless devices in one geographical area." *Id.* (citing '054 patent, col. 2 ll. 45-col. 3 ll. 26; '158 patent, col. 2. ll. 51-col. 3 ll. 30). After conducting an analysis, the Court found that Plaintiff applied an implausible construction of the term "wireless devices" and, under an alternative construction, alleged facts inconsistent with infringement. *Id.* at 7, 8.

This opinion provides further authority in support of the description of the Asserted Patents and that dismissal is appropriate where a party–particularly, the Plaintiff in this case–asserts an implausible construction or alleges facts inconsistent with infringement. *See id.* at 6 (explaining that Plaintiff's "reliance on *Disc Disease Sols. Inc.*, 888 F.3d at 120 is unpersuasive" because "[i]mplausible claim construction or allegations inconsistent with infringement represent exceptions to that standard") (citing *Ottah*, 884 F.3d at 1141-42; *Bot M8 LLC*, 4 F.4th at 1354). Accordingly, for these and the reasons stated in the motion and reply, the Court grants Google's Rule 12(b)(6) motion to dismiss Plaintiff's complaint for failure to state a patent claim for infringement upon which relief may be granted.

At the conclusion of its opposition to Google's motion, Plaintiff states: "[w]hile ALD believes that it has provided the Court with adequate basis to deny Google's motion in its entirety, in the event the Court grants relief to Google in any form, ALD respectfully requests leave to file an amended complaint." (Opposition [docket no. 15] at 7). The Fifth Circuit Court of Appeals has explained that a "bare request in an opposition to a motion to dismiss–without any indication of the particular grounds on which the amendment is sought ... does not constitute a motion within the contemplation of Rule 15(a)." *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Plaintiff's request for leave is just "tacked" to the end of its opposition to Google's motion to dismiss and mirrors language the Fifth Circuit has rejected as a proper request for leave to amend. *See Douglas v. DePhillips*, 740 F. App'x 403, 406 (5th Cir. 2018) ("At the end of their opposition to the motion to dismiss, Appellants stated that they 'should be given an opportunity to amend ... to further state any claims considered deficient' and 'to plead further' Richard's claims. These statements are insufficient to constitute a request for leave to amend under Rule 15(a)."); *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254-55 (5th Cir. 2003) (perceiving no abuse of discretion in denying leave to amend where plaintiffs "tacked on a general curative amendment request to the end of their response in opposition to the defendants' motion to dismiss" which stated: "Should this Court find that the Complaint is insufficient in any way, however, plaintiffs respectfully request leave to amend").

Plaintiff also fails to provide the Court with a proposed amended complaint or explain how the potential amendment would cure the defects identified in Google's motion. *Schiller v. Physicians Res. Grp., Inc.* 342 F.3d 563, 565 (5th Cir. 2003) (denying leave to amend where party did not formally move for leave or attach a copy of a proposed amended complaint); *see also* TXWD Loc. R. CV-7(b) (explaining that copy of proposed amended complaint must be attached to request for leave to amend pleading). And Plaintiff does not address Google's persuasive argument that an amendment would be futile. (Motion [docket no. 12] at 14) (arguing that amendment would be futile because "Plaintiff has affirmatively alleged facts confirming that the Accused Products are directed to determining other risks, which is inconsistent with the presence of a crowd risk determinant") (citing Comp. [docket no. 1-1] at 42, 51). Accordingly, Plaintiff's request for leave to amend is denied.

**\*6**  IT IS THEREFORE ORDERED that Defendant Google LLC's Motion to Dismiss Plaintiff ALD Social, LLC's Complaint (docket no. 12) is GRANTED such that Plaintiff's complaint is DISMISSED WITH PREJUDICE for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that remaining motions pending with the Court, if any, are Dismissed as Moot and this case is CLOSED.

It is so ORDERED.

**All Citations**

Slip Copy, 2023 WL 3184631

---

**Footnotes**

1    *Verkada* was transferred from Texas Western to the Northern District of California with Plaintiff's consent. *See ALD Social, LLC v. Verkada, Inc.*, Civil Action No. WA-22-CA-00975-FB (W.D. Tex. Jan. 5, 2023) (docket no. 23.)

---

**End of Document**                                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.