**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| CONTIGUITY LLC, <br><br>         Plaintiff, <br><br>   v. <br><br> HIKVISION USA, INC., <br><br>         Defendant. | Case No. 3:23-cv-00160 |

**DEFENDANT'S MOTION AND BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A
<u>CLAIM UNDER FED. R. CIV. P. 12(b)(6)</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................. 1

II.     BACKGROUND ................................................................................................... 2

        A.     The '084 Patent. .......................................................................................... 2

        B.     The '084 Patent Litigation Campaign. ....................................................... 2

        C.     The W.D. Texas Rulings Dismissing Contiguity's Original and First
               Amended Complaints. ................................................................................. 3

        D.     The Present Case & The SAC Against Hikvision. ..................................... 4

III.    THE SAC AGAINST HIKVISION SHOULD BE DISMISSED ........................ 5

        A.     The SAC Should Be Dismissed Because It Fails To State A Plausible
               Claim For Infringement Of The '084 Patent By Hikvision. ...................... 6

               1.     The SAC Fails To State A Plausible Claim For Direct
                      Infringement. .................................................................................... 6

                      a.     The "*Transmit The Citation Signal To A Device Of A
                             Person Associated With The Vehicle*" Claim Limitation Is
                             Highly Material. .................................................................... 7

                      b.     The SAC Itself Confirms The Accused Hikvision Product
                             Does Not "*Transmit The Citation Signal To A Device Of A
                             Person Associated With The Vehicle*" As Required By All
                             Claims. ................................................................................... 8

                      c.     The SAC's Baseless Allegations of Internal Testing Were
                             Previously Pleaded In the FAC and Found Inadequate to
                             State a Claim; The Three New Conclusory Sentences Add
                             Nothing To Cure Those Inadequacies. ................................ 10

               2.     The SAC Fails To State A Plausible Claim for Indirect
                      Infringement. .................................................................................. 13

        B.     The SAC Should Also be Dismissed Because The Asserted '084 Patent
               Claims Are Directed To Ineligible Subject Matter Under 35 U.S.C. § 101. ....... 14

               1.     *Alice* Step One: The '084 Patent Claims Are Directed to an
                      Abstract Idea. ................................................................................. 15

               2.     *Alice* Step Two: The '084 Patent Claims Do Not Recite Any
                      Inventive Concept. ......................................................................... 19

IV.     THE SAC SHOULD BE DISMISSED WITH PREJUDICE ............................ 25

V.      CONCLUSION .................................................................................................. 25

## TABLE OF AUTHORITIES

**Page**

CASES

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ............................................................................ passim

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................6, 11, 12, 13

*Automated Tracking Sols., LLC v. Coca-Cola Co.*,
  723 F. App'x 989 (Fed. Cir. 2018) ........................................................17

*Ballard v. Devon Energy Prod. Co., L.P.*,
  678 F.3d 360 (5th Cir. 2012) ................................................................25

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
  687 F.3d 1266 (Fed. Cir. 2012) ............................................................24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................ passim

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F. 4th 1342 (Fed. Cir. 2021) ............................................................ passim

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
  927 F.3d 1306 (Fed. Cir. 2019) ............................................................21

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) ..............................................................19

*Cisco Sys., Inc. v. Uniloc 2017 LLC*,
  813 F. App'x 495 (Fed. Cir. 2020) ........................................................22

*Concaten, Inc. v. Ameritrak Fleet Sols.*,
  LLC, 131 F. Supp. 3d 1166 (D. Colo. 2015), *aff'd*, 669 F. App'x 571 (Fed.
  Cir. 2016) ............................................................................................16

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) ............................................................24

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Data Engine Techs. LLC v. Google LLC*,
    906 F.3d 999 (Fed. Cir. 2018)........................................................................................7

*De La Vega v. Microsoft Corp.*,
    No. W-19-CV-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020).........................12

*Elan Microelectronics Corp. v. Apple, Inc.*,
    No. C 09-01531, 2009 WL 2972374 (N.D. Cal. Sept. 14, 2009) .....................................11, 13

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)..............................................................................17, 19, 21

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016)....................................................................................17

*Glasswall Sols. Ltd. v. Clearswift Ltd.*,
    754 F. App'x 996 ......................................................................................................23

*Gottschalk v. Benson*,
    409 U.S. 63 (1972)...............................................................................................18, 19

*Grecia Est. Holdings LLC v. Meta Platforms, Inc.*,
    605 F. Supp. 3d 905 (W.D. Tex. 2022)............................................................................12

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
    839 F. App'x 534 (Fed. Cir. 2021) ...............................................................................17

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012).....................................................................................13

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2008).......................................................................................14

*In re Killian*,
    45 F.4th 1373 (Fed. Cir. 2022) .....................................................................................17

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016).......................................................................................21

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    572 U.S. 915 (2014).....................................................................................................14

**TABLE OF AUTHORITIES**
(continued)

Page

*Lozano v. Ocwen Fed. Bank, FSB,*
    489 F.3d 636 (5th Cir. 2007) ...............................................................25

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995)...............................................................23

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.,*
    566 U.S. 66 (2012)........................................................................15, 19

*NetSoc, LLC v. Match Grp., LLC,*
    No. 3:18-CV-01809-N, 2019 WL 3304704 (N.D. Tex. July 22, 2019)...........................14, 16

*NorthStar Sys. LLC v. Volkswagen AG,*
    No. 2:22-CV-00486-JRG, 2023 WL 5723648 (E.D. Tex. Sept. 5, 2023) ..............................12

*Parker v. Flook,*
    437 U.S. 584 (1978)........................................................................18

*PerformancePartners LLC v. NextGen Parking, LLC,*
    No. 3:23-cv-0564 (N.D.Tex. Mar. 26, 2024)................................................16, 21

*Rady v. Bos. Consulting Grp., Inc.,*
    No. 2022-2218, 2024 WL 1298742 (Fed. Cir. Mar. 27, 2024).............................23

*Realtime Adaptive Streaming LLC v. Netflix, Inc.,*
    No. 17-cv-1692, 2018 WL 6521978 (D. Del. Dec. 12, 2018) ...................................7

*Roton Barrier, Inc. v. Stanley Works,*
    79 F.3d 1112 (Fed. Cir. 1996)...............................................................23

*Sanderling Mgmt. Ltd. v. Snap Inc.,*
    65 F.4th 698 (Fed. Cir. 2023) ...............................................................25

*SAP Am., Inc. v. InvestPic, LLC,*
    898 F.3d 1161 (Fed. Cir. 2018).......................................................... passim

*Solomon v. Kimberly-Clark Corp.,*
    216 F.3d 1372 (Fed. Cir. 2000)...............................................................23

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring).........................................14

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019)................................................................................17

**STATUTES**

35 U.S.C. § 101 ............................................................................................... passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)..............................................................................................6, 25

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
|  | Declaration of Keith B. Davis in support of Hikvision's Motion to Dismiss the Second Amended Complaint |
| A | U.S. Patent No. 8,031,084 ("the '084 patent") |
| B | W.D. Texas Section 101 Order, Dkt. 27 in *Contiguity LLC, v. Conduent Business Services, LLC,* 6:23-cv-00038-XR, (W.D. Tex. May 12, 2023) |
| C | Chart of '084 patent claims 1-4, 8, 15 |
| D | Assignment History of the '084 Patent |
| E | Applicant's Response to First Office Action in U.S. Application No. 12/907,702 |
| F | Applicant's Amendments to the Claims in Response to First Office Action in U.S. Application No. 12/907,702 |
| G | W.D. Texas 12(b)(6) Order, Dkt. 42 in *Contiguity LLC, v. Conduent Business Services, LLC,* 6:23-cv-00038-XR, (W.D. Tex. Jan. 22, 2024) |
| H | Dkt. 37, Order Granting Hikvision USA, Inc.'s Motion to Dismiss Contiguity's First Amended Complaint, *Contiguity LLC v. Hikvision USA, Inc.*, 3:23-cv-00160-N (N.D. Tex. Dec. 19, 2023) |

## I.     INTRODUCTION

Contiguity's Second Amended Complaint ("SAC") alleging that Hikvision USA, Inc. ("Hikvision") infringes U.S. Patent No. 8,031,084 ("the '084 patent") (Ex. A (APPENDIX_007-17)) should be dismissed on the same grounds that Contiguity's First Amended Complaint ("FAC") was dismissed—it fails to sufficiently plead infringement by Hikvision.  *See* Dkt. 37 (APPENDIX_055-060).  ***The only change to Contiguity's SAC was the addition of three sentences*** asserting—without any factual support whatsoever—that Hikvision performs "internal testing" in an allegedly infringing manner.  Dkt. 44 at 7, ¶ 28.  But Contiguity provides no factual basis for its claims that such internal testing was ever conducted.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Even if the FAC did provide adequate basis for such a claim, it would still suffer from the ***same fundamental flaw that led to dismissal of the FAC***.  Each of the asserted claims requires that the accused Hikvision device "***transmit the citation signal to a device of a person associated with the vehicle.***"  *See* Ex. A at claims 1, 8, and 15 (APPENDIX_016-17).  Not only does the SAC fail to plausibly allege this limitation is satisfied, but it expressly pleads facts demonstrating that the accused Hikvision product operates in a manner ***inconsistent*** with the asserted claims.  As the SAC expressly alleges, in the accused Hikvision product, any potentially citable conduct (i.e., speeding) is transmitted to ***police*** or ***law enforcement***, and ***not*** to the ***device of a person associated with a vehicle***, as all the '084 patent claims require.  Accordingly, the SAC should be dismissed on the same ground that the FAC was dismissed—failure to plausibly plead infringement.

In addition to failing to state a claim, the SAC should be dismissed because the '084 patent is invalid under 35 U.S.C. § 101, as Judge Rodriguez has already found in the Western District of Texas.

II.     **BACKGROUND**

A.      **The '084 Patent.**

The '084 patent is directed to a "method, system and computer program product for vehicle speed acquisition and citation." *See* Ex. A at Abstract (APPENDIX_007). The '084 patent describes using cameras to monitor the speed of a vehicle traveling between two measurement points. Ex. A at 3:16-29, FIG. 1 (APPENDIX_008, 014). The '084 patent discloses first and second camera "imaging stations," spaced a known distance apart. Image data and time stamps are recorded at each station and used to calculate the speed of the vehicle. The '084 patent further discloses that a "citation signal" (*i.e.*, a speeding ticket) may be generated based on the vehicle's speed and thereafter transmitted or communicated over a network.

In a prior case, Judge Rodriguez summarized the '084 patent as follows:

> 1. The patent is titled "method and system for infraction detection based on vehicle traffic flow data" and is used to monitor vehicle speeds. *Id.* First, multiple devices are placed at several geographic locations along a single route, such as a highway. ECF No. 1-1. Then, the devices monitor the time it takes for a vehicle to travel from one device to another by taking images at each station and comparing the timestamps of the images, thereby calculating the vehicle's speed. *Id.* If the vehicle travels faster than the predetermined speed limit for the area, an automatic citation signal is generated. *Id.*

Ex. B at 1 (APPENDIX_019).

B.      **The '084 Patent Litigation Campaign.**

The '084 patent issued to Ariel Inventions, LLC in 2011 and was acquired over a decade later by Contiguity. *See* Exs. A & D (APPENDIX_007-17; APPENDIX_032-33). Within four months of acquiring the '084 patent, Contiguity began asserting the patent against multiple entities, in addition to Hikvision. *See* Dkt. 20 at 8.

**C.    The W.D. Texas Rulings Dismissing Contiguity's Original and First Amended Complaints.**

In a recently dismissed case, Contiguity asserted the '084 patent against Conduent Business Services ("Conduent") in the Western District of Texas.  Conduent filed a motion to dismiss the original complaint, in part, because the '084 patent claims are invalid under 35 U.S.C. § 101.  W.D. Tex. No. 6-23-cv-00038, Dkt. 7.  Judge Rodriguez granted that motion on May 12, 2023, finding independent claim 1 and dependent claim 4 of the '084 patent invalid under § 101.  *See* Ex. B (W.D. Texas Section 101 Order (APPENDIX_019-028)).

Judge Rodriguez dismissed without prejudice, giving Contiguity an opportunity to amend. Ex. B at 10 (APPENDIX_028).  Contiguity filed a first amended complaint in W.D. Texas on June 9, 2023, adding a number of new paragraphs to the body of the pleading and attaching a declaration from the named inventor of the '084 patent, Leigh Rothschild.  Conduent Dkt. 31 (Jun. 9, 2023).

Conduent thereafter renewed its § 101 challenge, filing a motion to dismiss the first amended complaint on June 23, 2023, maintaining that the amended pleading "pleads no additional facts which would alter the outcome [under § 101] in any way."  Conduent Dkt. 33 at 5 (Jun. 23, 2023).  Subsequently, Judge Rodriguez dismissed the First Amended Complaint with prejudice, on the basis that Contiguity—as here—had "plead[] itself out of Court" by "alleging a direct infringement theory that is incompatible with any plausible construction of the asserted claims." Ex. G (W.D. Texas 12(b)(6) Order at 6 (APPENDIX_046-054)).  Judge Rodriguez elected to not revisit the prior § 101 invalidity finding in the second dismissal ruling:

> [6] Though the Court previously dismissed Contiguity's complaint on 35 U.S.C. § 101 invalidity grounds, ECF No. 27, Contiguity's failure to adequately plead infringement of the '084 Patent is an independently sufficient ground for dismissal. As such, the Court will forgo belaboring the § 101 issue again.

Ex. G at 6, n. 6.

**D.      The Present Case & The SAC Against Hikvision.**

Contiguity originally filed this case asserting the '084 patent against Hikvision on January 20, 2023.  After Judge Rodriguez's May 2023 ruling of § 101 invalidity in the W.D. Texas case against Conduent, Contiguity filed the FAC in this case on June 26, 2023 (Dkt. 18).  Contiguity added statements about the '084 patent in new paragraphs 11-25, which were copied verbatim from the newly-added paragraphs in the W.D. Texas amended pleading against Conduent.  *See* Dkt. 18.  The FAC against Hikvision also attached a declaration from the '084 patent inventor Mr. Rothschild; the Rothschild declaration[1] is likewise identical to the declaration submitted in the W.D. Texas case.  *See* Dkt. 18-4.  The FAC against Hikvision also included a claim chart purportedly identifying the Hikvision "Speed Measurement Solution" product as allegedly infringing the '084 patent.  Dkt. 18-2.

Hikvision filed a Motion to dismiss Contiguity's FAC on July 10, 2023 alleging that (A) the claims of the '084 patent were invalid under 35 U.S.C. § 101 and (B) Contiguity had pleaded facts that were inconsistent with and contradicted infringement.  *See* Dkt. 20.  The Court granted Hikvision's Motion to Dismiss on December 19, 2023, finding that Contiguity had "not alleged facts sufficient to state a claim for patent infringement."  Dkt. 37 (APPENDIX_055-060). In dismissing the FAC, the Court found that "[c]onspicuously absent is any allegation that the accused Hikvision products at any time transmit or attempt to transmit a citation signal to the person associated with the vehicle, as required by the '084 Patent claim limitations."  *Id*. at 4.  The Court did not address Hikvision's alternative ground for dismissal that the '084 patent is invalid under § 101, which Hikvision re-asserts in the present Motion.

---

[1] Contiguity's SAC only contains copies of the claim charts, and does not contain exhibits such as the Rothschild declaration, LinkedIn pages, or a copy of the '084 patent, which were previously provided with the FAC.  *See* Dkts. 18-1, 18-3, and 18-4.

The Court dismissed Contiguity's FAC with prejudice on December 19, 2023, and entered a final judgment the same day.  *See* Dkts. 37-38 (APPENDIX_055-060).  Thereafter, Contiguity filed a Motion to Alter the Judgment, which the Court granted on March 8, 2024.  As a result, Contiguity filed the current SAC on March 8, 2024.  Dkt. 44.  Contiguity's SAC contains just one minor difference from the previously dismissed FAC—the only change was to add the following three sentences to paragraph 28 (and reproduced in its claim chart):

> It is standard practice for any company to thoroughly test its products and, in this instance, for Defendant to test the functioning of the citation signal.  During internal testing and use of the Exemplary Products, Defendant attempts to transmit a citation signal to a device of one of Defendant's employees driving or otherwise associated with the vehicle used as part of Defendant's internal testing.  Thus, the citation signal would need to be routed directly to Defendant, and/or to an employee or agent of Defendant associated with the vehicle.

Dkt. 44 at 7 and 19.  The FAC provides no plausible factual basis, however, for the occurrence of the alleged internal testing.  Nor does the FAC provide a shred of evidence—let alone plausible allegations—supporting that as part of such testing, a citation signal is sent to the employee performing the testing.  The SAC does not even explain how it would be possible or even make sense for Hikvision to generate and send a citation to one of its employees performing testing.

## III.    THE SAC AGAINST HIKVISION SHOULD BE DISMISSED

The SAC against Hikvision should be dismissed on two independent grounds: (A) because Contiguity fails to state a plausible claim for infringement by Hikvision; and (B) because the '084 patent claims are invalid as a matter of law under § 101.[2]  As Contiguity's SAC repeats

---

[2] If the Court finds the SAC does not plead a plausible claim, then it need not reach the § 101 issue.  Likewise, if the Court agrees with W.D. Texas Judge Rodriguez's prior ruling that the '084 patent claims invalid under § 101, then the Court need not determine whether the infringement claims against Hikvision are plausible.

exactly the same claims of patent infringement contained in its previously dismissed FAC, Hikvision likewise repeats its prior arguments that are similarly applicable to the SAC.

### A.   The SAC Should Be Dismissed Because It Fails To State A Plausible Claim For Infringement Of The '084 Patent By Hikvision.

To survive dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In the patent infringement context, the Federal Circuit has held that "a plausible claim must do more than merely allege entitlement to relief; it must support the grounds for that entitlement with sufficient factual content." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F. 4th 1342, 1352 (Fed. Cir. 2021).  According to the Federal Circuit, a patent owner "cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements.  There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* at 1353.  Moreover, "a patentee may subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims." *Id.* at 1346.

### 1.   The SAC Fails To State A Plausible Claim For Direct Infringement.

Contiguity's SAC fails to plausibly allege that the accused Hikvision products infringe the '084 patent claims, and actually pleads facts confirming that Hikvision does not practice a material claim limitation: the "***transmit the citation signal to a device of a person associated with the vehicle***" limitation.  As the SAC expressly pleads, in the accused Hikvision product, any potentially citable conduct (i.e., speeding) is transmitted to ***police*** or ***law enforcement***, and ***not*** to the ***device of a person associated with a vehicle***, as all the '084 patent claims require.

a.   The "*Transmit The Citation Signal To A Device Of A Person Associated With The Vehicle*" Claim Limitation Is Highly Material.

The Court acknowledged in its dismissal of the FAC that "Hikvision asserts, and Contiguity does not contest, that the Claim 1 limitation 'attempting to transmit the citation signal to a device of a person associated with the vehicle' is material to the '084 patent." Dkt. 37 at 4 (APPENDIX_059).   This claim limitation remains material for the purposes of evaluating Contiguity's SAC.   As with the FAC, the SAC pleads that during prosecution, the USPTO Examiner was told that the claim limitation "attempting to transmit the citation signal to a device of a person associated with the vehicle" was not disclosed in the prior art.   *See* Dkt. 44 at ¶¶19-21; *see also* ¶¶24-25.

Indeed, during prosecution, the Examiner rejected the original patent claims based on multiple prior art references.   *See* Ex. E at 7-10 (APPENDIX_035-38).[3]   To overcome the USPTO's rejection—and in order to gain allowance—the Applicant amended each of the independent claims to expressly require "attempting to transmit/communicate" the citation signal "*to a device of a person associated with the vehicle*":

| Independent Claim 1 | Independent Claim 8 | Independent Claim 15 |
|---|---|---|
| "attempting to transmit the citation signal *to a device of a person associated with the vehicle*" | "attempting to communicate the citation signal *to a device of a person associated with the vehicle*" | "attempting to transmit the citation signal *to a device of a person associated with the vehicle*" |

---

[3] The Court took judicial notice of the '084 patent prosecution history in its dismissal of the FAC (*See* Dkt. 37 at 4, n. 1(APPENDIX_059)), and for the same reasons, should do so here. *See, e.g., Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018) (on a motion for judgment on the pleadings, "the court may consider 'matters of public record,' such as '[p]rosecution histories'"); *Realtime Adaptive Streaming LLC v. Netflix, Inc.*, No. 17-cv-1692, 2018 WL 6521978, at *11 (D. Del. Dec. 12, 2018) (taking "judicial notice of the file history of the asserted patents because they are public record" in deciding 12(b)(6) motion to dismiss).

*See* Ex. F at 2-6 (APPENDIX_041-45) (emphasis added) (application claims 1, 9, and 17 issued as claims 1, 8, and 15).  The Applicant argued this newly-added claim limitation distinguished over the conventional prior art approach of police issuing a speeding ticket when a vehicle exceeded a speed limit.  *Id*.

The SAC and the prosecution history confirm that the limitation requiring the step of attempting to transmit/communicate the citation signal "***to a device of a person associated with the vehicle***" was specifically added to all the claims during prosecution to distinguish over the prior art and gain allowance of the '084 patent.  This claim limitation is therefore necessarily material, and Contiguity must plead facts showing how this material limitation is present in the accused Hikvision product.  *Bot M8*, 4 F. 4th at 1353 ("[t]he level of detail required in any given case will vary depending upon a number of factors, including … the materiality of any given element to practicing the asserted claim(s) **…** ").  But the SAC actually pleads facts to the contrary, demonstrating that this claim limitation is indisputably ***not*** present in the accused Hikvision product.

>   b.   **The SAC Itself Confirms The Accused Hikvision Product Does Not "*Transmit The Citation Signal To A Device Of A Person Associated With The Vehicle*" As Required By All Claims.**

In its SAC, Contiguity includes a claim chart in support of its allegation that '084 patent claims 1-3 are infringed.  *See* Dkt. 44 at 11-22.  Contiguity's claim chart identifies Hikvision's "Speed Measurement Solution" as the allegedly-infringing product.  *Id.*  Contiguity's claim chart includes multiple excerpts from Hikvision's website that confirm there can be no infringement of the '084 patent claims—let alone make a plausible claim of infringement—because the claim limitation "attempting to transmit the citation signal to a device of a person associated with the vehicle" is not met:

> When the vehicle exceeds the predetermined car limit, a citation (or traffic violation event) is generated. The traffic violation event (here, over-speeding alert) is send to police and then police issues traffic tickets to drivers of the vehicles. It is standard practice for any company, as for Hikvision, to thoroughly test its products and, in this instance, for Hikvision to test the functioning of the citation signal. During internal testing and use of the Exemplary Products, Hikvision attempts to transmit a citation signal to a device of one of Hikvision's employees driving or otherwise associated with the vehicle used as part of Defendant's internal testing. Thus, the citation signal would need to be routed directly to Hikvision, and/or to an employee or agent of Hikvision associated with the vehicle.

> The speed violation data is firstly sent to police (law enforcement agency) for review.

> ## Verifying Violations with Recorded Evidence
> Traffic cameras automatically identify and report traffic violation events such as running red lights, speeding, improper lane usage, illegal parking, using a phone while driving, and failure to use a seat belt. Traffic officers can then search for and verify reported events manually. And when violations are confirmed, traffic officers can issue traffic tickets using the captured video as evidence.

*See* Dkt. 44 at 19 and 21.  Nothing in these excerpts, nor any other material in the claim chart, alleges that a citation signal is transmitted or communicated "***to a device of a person associated with the vehicle***," as the '084 patent claims necessarily require.  *See* Dkt. 44, at 19-20.  Instead, Contiguity's claim chart expressly states that a citation signal is allegedly "generated" and then the traffic violation event "***is send [sic] to police and then police issues traffic tickets*** to drivers of the vehicles."  *Id.* (emphasis added).  Contiguity's claim chart attached to the SAC further alleges that "speed violation data is ***firstly sent to police (law enforcement agency)*** for review," with "traffic officers" able to "search for and verify reported events manually"—and "when violations are confirmed, ***traffic officers can issue traffic tickets*** using the captured video as evidence."  *Id.* at 21 (emphasis added).  The SAC itself thus alleges that the Hikvision product transmits speed violation data "to police"—and ***not*** "to a device of a person associated with the vehicle"—with the "police issu[ing] traffic tickets to the drivers of the vehicles" in the conventional way.  Consequently, Contiguity has pleaded "an inconsistency that is fatal to its infringement case."  *Bot M8*, 4 F.4th at 1354 ("Where, as here, the factual allegations are actually

9

*inconsistent* with and contradict infringement, they are likewise insufficient to state a plausible claim.") (emphasis in original).

The infringement allegations in the SAC are not only inconsistent with the literal claim language, but they also contradict the USPTO prosecution history recounted in the SAC.  As the SAC itself alleges (¶¶ 18-20, 24-25), the step of "attempting to transmit the citation signal to a device of a person associated with the vehicle" was added to the patent claims during prosecution to persuade the USPTO to issue the '084 patent.  In fact, during prosecution the Applicant argued to the USPTO that the prior art Trajkovic's traffic monitoring system "issues a ticket when a vehicle exceeds a speed limit, makes an unlawful turn, or fails to stop at a stop sign."  *See* Ex. E at 8 (APPENDIX_036).  The Applicant further represented to the USPTO that "[m]erely issuing a ticket is not the same as transmitting a signal that indicates a violation," and "[p]ut another way, Trajkovic fails to teach or suggest attempting to transmit or communicate 'a citation signal to a wireless device of a person associated with the vehicle,'" as required by the newly-added claim limitations.  *Id*.  The infringement allegations in the SAC wholly contradict the representations made to the USPTO that the '084 patent claims are limited to transmitting/communicating a citation signal "to a device of a person associated with the vehicle," and do ***not*** cover the police or traffic officers issuing a ticket as in the prior art.  Thus, Contiguity has "pleaded itself out of court." *Bot M8*, 4 F.4th at 1346.

> **c.    The SAC's Baseless Allegations of Internal Testing Were Previously Pleaded In the FAC and Found Inadequate to State a Claim; The Three New Conclusory Sentences Add Nothing To Cure Those Inadequacies.**

Significantly, the previously-dismissed FAC pleaded direct infringement based, in part, on alleged internal testing by Hikvision employees. Dkt. 18 at 7.  The Court found the infringement allegations in the FAC were insufficient to state a claim and, therefore, the FAC was originally

dismissed with prejudice. The SAC contains only three new sentences that do nothing more than reiterate an allegation of alleged internal testing by Hikvision using paraphrases of the claim language. The alleged internal testing was insufficient to state a plausible claim before, and the three new sentences attempting to describe that alleged testing using the language of the patent claims is still insufficient to meet the pleading standards set forth in *Twombly* and *Iqbal*. Contiguity amended Paragraph 28 (and the accompanying claim chart) in the SAC to include the three new sentences shown in blue below:

> 28. Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, the Exemplary '084 Patent Claims, by having its employees internally test and use these Exemplary Products. It is standard practice for any company to thoroughly test its products and, in this instance, for Defendant to test the functioning of the citation signal. During internal testing and use of the Exemplary Products, Defendant attempts to transmit a citation signal to a device of one of Defendant's employees driving or otherwise associated with the vehicle used as part of Defendant's internal testing. Thus, the citation signal would need to be routed directly to Defendant, and/or to an employee or agent of Defendant associated with the vehicle.

Dkt. 44 at 7 and 19 (SAC additions emphasized in blue).

Paragraphs 28 of the FAC and SAC are not meaningfully different. In both, Contiguity merely alleged hypothetical internal testing as the basis for an allegation of direct infringement, and Contiguity provides no citation or reference to any factual basis for its claims that Hikvision conducted any such "internal testing" of the alleged products. In fact, Contiguity provides no factual allegations at all regarding any actual Hikvision testing or other activity. Rather, Contiguity speculates that "[i]t is standard practice for any company to thoroughly test its products," but pure speculation of patent infringement is not sufficient to comply with the pleading requirements set forth in Rule 8. *See Bot M8*, 4 F. 4th at 1352 ("a plausible claim must do more than merely allege entitlement to relief; it must support the grounds for that entitlement with sufficient factual content"); *Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531, 2009 WL

2972374, at *2-4 (N.D. Cal. Sept. 14, 2009) ("[Patentee] should be able to articulate at least some facts as to why it is reasonable to believe there is infringement. Simply guessing or speculating that there may be a claim is not enough."). Other courts have dismissed similar purely-speculative and insufficient infringement claims based on alleged internal testing, and this Court should do likewise. *See De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *4-5 (W.D. Tex. Feb. 11, 2020) (finding patent owner's claims that Defendants' alleged testing constituted patent infringement insufficient to meet the requirements of *Twombly* and *Iqbal* as patent owner "has not articulated any basis that would establish that [Defendants] performed all of the elements of the claim when it tested accused products." Therefore "Plaintiff is doing nothing more than making that assumption."); *see also Grecia Est. Holdings LLC v. Meta Platforms, Inc.*, 605 F. Supp. 3d 905, 916 (W.D. Tex. 2022) ("Grecia states that [Defendant] infringes with its 'internal testing, quality assurance, research and development, and troubleshooting.' That level of detail, however, falls short of the relevant pleading standard given the complexity of the disputed technology."); *NorthStar Sys. LLC v. Volkswagen AG*, No. 2:22-CV-00486-JRG, 2023 WL 5723648, at *2-3 (E.D. Tex. Sept. 5, 2023) (dismissing under 12(b)(6) where allegations of "testing and troubleshooting" were provided without any factual support).

Contiguity follows its speculation that Hikvision may have tested the "Exemplary Products" with a conclusory statement that during the alleged testing "Defendant attempts to transmit a citation signal to a device of one of Defendant's employees driving or otherwise associated with the vehicle used as part of Defendant's internal testing." Dkt. 44 at 7. Not only does such a statement lack any factual support, but it does not even make sense. *See* Dkt. 37 at 4 (APPENDIX_059). Contiguity fails to allege or explain how Hikvision would even have the

12

authority to create and transmit a citation signal (*i.e.*, a speeding ticket) to an employee.  The allegation is implausible on its face.

Finally, even taking as true Contiguity's allegations that Hikvision conducted internal testing of the alleged product—and Contiguity has presented no evidence that it has—those testing allegations contain the same fundamental flaw noted by the Court in its dismissal of the FAC: Contiguity's claim chart alleges that the "accused Hikvision product transmits citation signals to police or law enforcement."  Dkt. 37 at 4 (APPENDIX_059).  Contiguity provides no evidence or support to show that the alleged testing would involve sending a citation signal "to a device of a person associated with the vehicle" rather than "to police or law enforcement" as the accused product is alleged to do according to Contiguity's claim charts.  Nor is there any plausible allegation for how or why Hikvision could ever create and send a traffic citation to one of its employees, or why it would ever even make sense to do so.  Contiguity's speculation that the accused Hikvision product *may* have been tested in the manner alleged in the SAC, even if taken as true, is insufficient to state a claim.  *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 663-64; *Elan*, 2009 WL 2972374, at *2-3.

## 2.     The SAC Fails To State A Plausible Claim for Indirect Infringement.

In dismissing the FAC, the Court found that "Contiguity has not pled any facts plausibly alleging that Hikvision 'specifically intended their customers to infringe the [] patent and knew that the customer's acts constituted infringement,' as required to state an induced infringement claim."  Dkt. 37 at 5 (APPENDIX_060) (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)).  Contiguity's SAC contains the same deficiencies and therefore its claims of indirect infringement should likewise be dismissed.  Contiguity's additions to paragraph 28 of the SAC (reproduced above) relate to alleged internal testing and therefore provide no evidence that Hikvision specifically intended their customers to

13

infringe the '084 patent or knew that the customers acts (if found to be infringing) constituted infringement.  *See id.*

Moreover, as explained above, Contiguity's SAC fails to state a plausible claim for direct infringement against Hikvision, and, consequently Contiguity's inducement claim in the SAC fails for this reason alone.  *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 922 (2014) ("[W]here there has been no direct infringement, there can be no inducement of infringement under § 271(b).").

**B.   The SAC Should Also be Dismissed Because The Asserted '084 Patent Claims Are Directed To Ineligible Subject Matter Under 35 U.S.C. § 101.**

Whether a claim is drawn to patent-eligible subject matter under 35 U.S.C. § 101 is an issue of law.  *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008).  Patent eligibility under § 101 is a threshold legal issue that "may be, and frequently has been, resolved on a 12(b)(6) or (c) motion." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *see, e.g., NetSoc, LLC v. Match Grp., LLC*, No. 3:18-CV-01809-N, 2019 WL 3304704 (N.D. Tex. July 22, 2019) (finding patent claims invalid under § 101 and granting 12(b)(6) motion to dismiss).  "Failure to recite statutory subject matter is the sort of 'basic deficiency,' that can, and should, 'be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring).

Patent eligibility under § 101 is analyzed using the Supreme Court's two-step framework articulated and reaffirmed in *Alice*:

> (1) The "Court must first determine whether the claims at issue are directed to a patent-ineligible concept," like an abstract idea.
>
> (2) If so, the court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014); *see also Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66 (2012).

The '084 patent was issued by the USPTO in October 2011, before the Supreme Court's decision in *Mayo* and nearly 3 years before *Alice*. The '084 patent claims fail both steps of the *Alice* test.

### 1. *Alice* Step One: The '084 Patent Claims Are Directed to an Abstract Idea.

At *Alice* step one, Judge Rodriguez correctly found the '084 patent claims fail step one of the *Alice* framework because they "are directed to the abstract idea of collecting, analyzing, and displaying data." WD Texas Section 101 Order at 5-8 (Ex. B (APPENDIX_023-26)). Judge Rodriguez scrutinized the '084 patent and concluded the claims were directed to a patent-ineligible abstract idea:

> After evaluating the pleadings and the '084 Patent specifications, the Court has determined that the '084 Patent is focused on the abstract concept of collecting and analyzing data, and merely mechanizes concepts capable of resolution by the human brain.

Ex. B at 6 (APPENDIX_024).

Reviewing '084 claims 1-3 confirms the correctness of Judge Rodriguez's prior determination, as these claims are directed solely to the abstract concept of collecting, analyzing, and displaying or transmitting vehicle-related data:

| U.S. 8,031,084 | |
|---|---|
| 1. A method of infraction detection based on vehicle traffic flow data, the method comprising: *acquiring* first imagery of a plurality of vehicles at a first location at a first time; | collecting data |
| *acquiring* second imagery of a plurality of vehicles at a second location at a second time; | collecting data |

15

| U.S. 8,031,084 | |
|---|---|
| *identifying* a first vehicle from the acquired first imagery and the acquired second imagery; | analyzing data |
| *determining* a speed of the first vehicle; | analyzing data |
| *generating* a citation signal when the speed of the first vehicle exceeds a predetermined speed; and | analyzing data |
| *attempting to transmit the citation signal to a device* of a person associated with the vehicle. | displaying or transmitting / communicating data |
| 2. The method of claim 1, wherein *the citation signal is communicated* to a law enforcement agency. | displaying or transmitting / communicating data |
| 3. The method of claim 2, wherein at least a portion of at least one of the acquired *first and second imagery is communicated* to the law enforcement agency. | displaying or transmitting / communicating data |

Ex. A (APPENDIX_007-17).  These claims are directed to a series of steps for manipulating data and nothing more: collecting vehicle data ("acquiring imagery"); analyzing the data ("identifying a vehicle", "determining a speed," "generating a citation signal"); and displaying or transmitting the results of the data collection and analysis ("attempting to transmit the citation signal to a device," "imagery is communicated to the law enforcement agency").  *Compare Concaten, Inc. v. Ameritrak Fleet Sols.*, LLC, 131 F. Supp. 3d 1166, 1172 (D. Colo. 2015), (finding patent claims directed to the abstract idea of "collecting information from a vehicle and transmitting that information over a network" invalid under § 101), *aff'd*, 669 F. App'x 571 (Fed. Cir. 2016); *Order*, Dkt. 22, at 10, *PerformancePartners LLC v. NextGen Parking, LLC*, No. 3:23-cv-0564 (N.D. Tex. Mar. 26, 2024) (finding the use of computers "to automate the process of identifying and tracking vehicles—is directed at the abstract ideas of collecting information and automating human activity").

As this Court has recognized, "presenting results of data collection and analysis [is] something that the Federal Circuit has explicitly said resides squarely in the realm of abstract ideas." *NetSoc,* 2019 WL 3304704 at \*2.  Indeed, the Federal Circuit has consistently and repeatedly held invalid under § 101 patent claims directed to abstract techniques for collecting,

analyzing, and displaying or presenting/transmitting the results of the data collection and analysis. *See, e.g., In re Killian*, 45 F.4th 1373, 1380 (Fed. Cir. 2022) ("We have found similar claims pertaining to data gathering, analysis, and notification on generic computers to be directed to abstract ideas at *Alice/Mayo* step one."); *iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 F. App'x 534, 536 (Fed. Cir. 2021) (affirming finding that patent claim was directed to abstract idea of "gathering, processing, and transmitting information"); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) ("selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis … is all abstract"); *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 993 (Fed. Cir. 2018) (affirming dismissal under § 101 where claims directed to abstract idea of "collecting data from sensors, analyzing that data, and determining results based on the analysis of data"); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093-94 (Fed. Cir. 2016) (claims directed to abstract idea of "collecting and analyzing information to detect misuse and notifying a user when misuse is detected" invalid under § 101).

Judge Rodriguez looked to Federal Circuit precedent and found the '084 patent claims to be similar to the claims held invalid under § 101 in two cases: *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) (data "was previously collected, analyzed, manipulated, and displayed manually, and [the patent] simply proposes doing so with a computer"); and *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) ("collecting information, analyzing it, and displaying certain results of the collection and analysis").   He determined that, "[l]ike the patents at issue in *Univ. of Fla. Rsch. Found., Inc.* and *Elec. Power Grp. LLC*, the '084 Patent is fundamentally concerned with collecting data for presentation":

17

> The '084 Patent is analogous to patents in both *Univ. of Fla. Rsch. Found., Inc.* and *Elec. Power Grp., LLC* and falls into the category of collecting information. The '084 system collects information (images of a vehicle), analyzes it (compares two images to calculate speed), and displays results (whether or not the vehicle exceeded the speed limit). While Plaintiff notes that the collection is directed to a particular problem—traffic congestion—limiting the invention to a technological environment does "not make an abstract concept any less abstract." *Elec. Power*

> *Grp.,* 830 F.3d at 1353 ("Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas.").

Ex. B at 7-8 (APPENDIX_025-26).

> Moreover, like the claims in *Univ. of Fla. Rsch. Found., Inc.*, the '084 Patent describes its method in purely functional terms. For example, claim 1 covers "acquiring" images, "identifying" vehicles, "determining the speed," "generating a citation," and "attempting to transmit" the citation. In doing so, the claims are "directed to the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two." *In re TLI,* 823 F.3d at 612.

Ex. B at 8 (APPENDIX_026).

To the extent the "method of infraction detection" recited in the '084 patent claims "conducts mathematical analysis on the images," Judge Rodriguez properly recognized that "scientific truth[s], or the mathematical expression of it, [are] not patentable invention[s]." Ex. B at 8 (APPENDIX_026) (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)); *see also Parker v. Flook*, 437 U.S. 584, 595 (1978) ("if a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is

nonstatutory"). And "while the '084 patent 'computes speed,'" Judge Rodriguez correctly concluded that these calculations "essentially equate to a human mental process, which is a subcategory of abstract ideas." *Id.* (citing *Benson*, 409 U.S. at 67 and *Elec. Power Grp.*, 830 F.3d at 1355).

In sum, in the '084 patent, "the focus of the claims is not a physical-realm improvement but an improvement in wholly abstract ideas—the selection and mathematical analysis of information, followed by reporting or display of the results" *SAP*, 898 F.3d at 1168. This Court should find the claims of the '084 patent to be directed to an abstract idea, just as Judge Rodriguez did.

### 2.    *Alice* Step Two: The '084 Patent Claims Do Not Recite Any Inventive Concept.

*Alice* step two considers whether the patent claim elements, individually or as an ordered combination, provide an "inventive concept." *Alice*, 573 U.S. at 221 (citing *Mayo*, 132 S. Ct. at 1297-98). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea],'" and the Court looks to "whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217, 221. The "additional elements," however, "cannot simply be well-understood, routine, [or] conventional activities previously known to the industry." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019). Here, the '084 patent claims fail to add any technological improvement or otherwise provide "something more" to "transform" the claims into patent-eligible subject matter.

At *Alice* step two, Judge Rodriguez determined, correctly, that the '084 patent claims "at their essence … describe a method to assess a vehicle's speed" and fail to recite an inventive concept:

Plaintiff's claims do not describe an inventive concept. At their essence, claims 1 and 4 describe a method to assess a vehicle's speed: Plaintiff's devices acquire images of a vehicle at two different points, identify the vehicle in both images as one and the same, determine the vehicle's speed using basic arithmetic, and then either generate a citation or transfer this information to a "subscriber," oftentimes law enforcement. Claims 1 and 4 effectively digitize a mathematical equation (speed = distance ÷ time) but fail to provide any technical detail on how the invention goes beyond plugging in collected data to that equation. For example, the claims do not cover the specific camera system used in the devices, the vehicle system that integrates the images with a navigation system, nor the technology that automatically generates a citation. Even if Plaintiff is correct that it was the first to digitize detecting traffic infractions, without providing additional details of the unique collection methods—perhaps the camera, the means of reporting the data or the communication system—or algorithm, the claims merely embody an abstract concept. In conclusion, "simply implementing a mathematical principle on a physical machine, namely, a computer, [is] not a patentable application of that principle." *Mayo*, 566 U.S. at 84 (citing *Benson*, 409 U.S. at 71).

WD Texas Section 101 Order at 9-10 (Ex. B (APPENDIX_027-28)).

Judge Rodriguez recognized that the '084 patent claims fail to provide any "technical detail" on how the "method of infraction detection" "goes beyond plugging in collected data to [a mathematical] equation." *Id.* There is no technical detail in the claims regarding the "specific camera system," the "vehicle system that integrates the images with a navigation system," or the "the technology that automatically generates a citation." *Id.* There is likewise no technical detail in the claims regarding the "the camera, the means of reporting the data, or the communication system." *Id.*

20

The inventive concept cannot stem from the abstract idea itself to satisfy § 101. *SAP*, 898 F.3d at 1163. Where, as here, a patent claim's only alleged inventive concept involves the application of the abstract idea using "conventional and well-understood techniques[,]" then the claim has not been transformed into a patent-eligible application of an abstract idea. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019). Implementing an abstract idea in a "particular technological environment" with conventional computer and network technology is "insufficient." *Elec. Power Grp.*, 830 F.3d at 1354-55. As is incorporating conventional hardware components. *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016); *PerformancePartners*, No. 3:23-cv-0564 at 15, 17 (finding claims invalid under § 101 where the patent failed to "specify what type of sensors the user needs" and instead recites the use of computers but does not "specify how the computers will accomplish these goals at a technical level"); *Compare* WD Texas Section 101 Order at 9-10 (Ex. B (APPENDIX_027-28) ("Even if Plaintiff is correct that it was the first to digitize detecting traffic infractions, without providing additional details of the unique collection methods—perhaps the camera, the means of reporting the data or the communication system—or algorithm, the claims merely embody an abstract concept.").

Claims 1-3 do not recite—and the '084 patent does not even disclose—any purportedly new image/video capture device or new camera technology, nor does the '084 patent describe any new computer or networking technologies. Indeed, the '084 patent specification's description of the claimed technical components confirms they are off-the-shelf generic equipment. *See* Ex. A at 7:21-62 (APPENDIX_016). The use of generic cameras, computers, and networking technology does not amount to an "inventive concept" that "transform[s] a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223; *Elec. Power Grp.*, 830 F.3d at 1355 ("Nothing

in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information").

Nothing in the SAC or the attached inventor declaration from Mr. Rothschild identifies any "inventive concept" beyond the abstract idea of collecting and manipulating vehicle data, and none of the newly-added material in the SAC supports a conclusion contrary to the one already reached by Judge Rodriguez at *Alice* step two. The SAC and the Rothschild declaration merely repeat passages from the '084 patent specification, which Judge Rodriguez had already considered when he found the claims invalid under § 101. Ex. B at 6 (APPENDIX_024) ("After evaluating the pleadings and the '084 Patent specifications …"). Judge Rodriguez also previously acknowledged that "Plaintiff claims that the '084 Patent is the first mechanized 'solution' to determining traffic congestion and speeding infractions," but he nevertheless determined that "Plaintiff's claims do not describe an inventive concept" and that "[e]ven if Plaintiff is correct that it was the first to digitize detecting traffic infractions, without providing additional details of the unique collection methods—perhaps the camera, the means of reporting the data or the communication system—or algorithm, the claims merely embody an abstract concept." Ex. B at 10 (APPENDIX_028). Judge Rodriguez's analysis was spot-on.

As for Mr. Rothschild's conclusory assertions that his '084 patent claims cover "inventive concepts" and improvements that were not "well-understood, routine, and conventional," the Court may disregard these assertions since they are nothing more than boilerplate legal conclusions to attempt to stave off a § 101 ruling. *See Cisco Sys., Inc. v. Uniloc 2017 LLC*, 813 F. App'x 495, 498-99 (Fed. Cir. 2020) (affirming § 101 dismissal and finding district court correctly disregarded "purported factual allegations [that] were conclusory statements regarding eligibility," such as

"general allegations" that "the patent's disclosure and claims are drawn to solving a specific, technical problem" and "the inventions of the [asserted] patent were not well-understood, routine or conventional at the time of the invention"); *Glasswall Sols. Ltd. v. Clearswift Ltd.*, 754 F. App'x 996. 999 (Fed. Cir. 2018) (affirming dismissal under § 101 and finding that expert "declaration of the alleged advantages in the claimed invention also does not preclude dismissal on the pleadings" where "[t]he alleged 'factual' assertions" pointed to by patent owner "are not factual in nature, but conclusory legal assertions which the district court was 'not bound to accept as true'"); *Rady v. Bos. Consulting Grp., Inc.*, No. 2022-2218, 2024 WL 1298742, at *6 (Fed. Cir. Mar. 27, 2024) (affirming the dismissal under § 101 and finding the disclosure of "special sensors" in the patent insufficient where the patentee "failed to present nonconclusory allegations that his patent disclosed any specific technical improvements to computers, measurement devices, blockchains, or any other technology"). Moreover, Mr. Rothschild's litigation-derived, self-serving inventor testimony is of no probative value in assessing the scope of the patent claims. *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379-80 (Fed. Cir. 2000); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 985 (Fed. Cir. 1995) ("it is not unusual for there to be a significant difference between what an inventor thinks his patented invention is and what the ultimate scope of the claims is after allowance by the PTO"); *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1126 (Fed. Cir. 1996) ("We have previously stated that an inventor's after-the-fact testimony is of little weight compared to the clear import of the patent disclosure itself.").

The SAC fails to identify any inventive concept sufficient to transform the claimed abstract idea into a patent-eligible invention.

* * *

23

Claims 1-3 of the '084 patent fail both steps of the *Alice* test.  The claims are directed to the abstract idea of collecting, analyzing, and displaying or transmitting vehicle data, and they add no inventive concept that is significantly more than the abstract idea itself; instead, the claims merely use generically-described, conventional off-the-shelf technology to implement the abstract idea.  The claims are invalid under 35 U.S.C. § 101.

* * *

Asserted independent claim 1 of the '084 patent is directed to a "method of infraction detection" and is representative for purposes of § 101 because "all the claims are substantially similar and linked to the same abstract idea."  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).  The other two (non-asserted) independent claims are similarly directed to an "apparatus for determining a vehicle speeding infraction" (claim 8) and a "system of determining a speeding violation by a vehicle" (claim 15).  The apparatus and system claims are directed to the same abstract idea as recited in independent claim 1 (see Ex. C (APPENDIX_030)), and are likewise invalid under § 101.  *See Alice*, 573 U.S. at 227 ("Because petitioner's system and media claims add nothing of substance to the underlying abstract idea, we hold that they too are patent ineligible under § 101."); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1277 (Fed. Cir. 2012).  While independent claims 8 and 15 may recite generic "memory" or "processor" or "video/image capture devices," these are merely off-the-shelf components that Contiguity does not claim to have invented.  *SAP*, 898 F.3d at 1169-70 ("But it is clear, from the claims themselves and the specification, that these limitations require no improved computer resources [the patentee] claims to have invented, just already available computers, with their already available basic functions, to use as tools in executing the claimed process.").

24

## IV.    THE SAC SHOULD BE DISMISSED WITH PREJUDICE

The Court should dismiss the SAC with prejudice.  Contiguity has had three attempts to cure the deficiencies in its pleading and cannot do so, as demonstrated by its latest effort to state a claim for infringement in the SAC based on speculative and factually-unsupported allegations that Hikvision performed hypothetical internal testing because it was "standard practice" for "any company".  *See* Dkts. 1, 18, and 44.  Further amendments to Contiguity's complaint would be futile because—even according to Contiguity—the accused Hikvision product lacks an element required by all the patent claims (*i.e.*, "attempting to transmit/communicate the citation signal to a device of a person associated with the vehicle"); *Ballard v. Devon Energy Prod. Co.*, *L.P.*, 678 F.3d 360, 364 (5th Cir. 2012).  Moreover, no further amendment can cure the fact that the '084 patent claims are invalid as a matter of law under § 101.  *Sanderling Mgmt. Ltd. v. Snap Inc.,* 65 F.4th 698, 706 (Fed. Cir. 2023) ("No amendment to a complaint can alter what a patent itself states.").  Contiguity's SAC should be dismissed with prejudice, including because it has failed to take advantage of earlier opportunities to amend.  *See Ballard*, 678 F.3d at 364; *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 644 (5th Cir. 2007) ("[T]he district court may consider that the moving party failed to take advantage of earlier opportunities to amend.").

## V.    CONCLUSION

Contiguity has failed to state a plausible claim for infringement of the '084 patent by Hikvision, and the '084 patent claims are invalid under 35 U.S.C. § 101.  The SAC should be dismissed with prejudice under Rule 12(b)(6).

Dated: April 8, 2024

Respectfully submitted,

*/s/ Keith B. Davis*
Keith B. Davis
Texas State Bar No. 24037895
JONES DAY
2727 North Harwood Street
Dallas, TX 75201.1515
Telephone: +1.214.220.3939
Facsimile: +1.214.969.5100

*ATTORNEY FOR DEFENDANT*
*HIKVISION USA, INC.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 8, 2024, the foregoing document was served via electronic means upon the following counsel of record for Plaintiff who have appeared in this case:

William P. Ramey, III
wramey@rameyfirm.com
Jeffrey E. Kubiak
jkubiak@rameyfirm.com
Ramey LLP
5020 Montrose Blvd.
Suite 800
Houston, Texas 77006

*/s/ Keith B. Davis*